UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NAIRAMAT INVESTMENTS, LLC, )| |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 1:18-cv-391** |
| ) | |
| SCOTT M. WISE, ) | |
| SCOTTY'S HOLDINGS, LLC, ) | |
| PRP SCOTTY'S HOLDINGS, LLC, ) | |
| and BEREKK A. BLACKWELL, ) | |
| ) | |
|     **Defendants.** ) | |

## COMPLAINT

COMES NOW, Nairamat Investments, LLC, Plaintiff, by counsel, and files its Complaint against Scott M. Wise, Scotty's Holdings, LLC, PRP Scotty's Holdings, LLC and Berekk A. Blackwell, and alleges and states:

Parties, Jurisdiction and Venue

1.    Nairamat Investments, LLC ("Plaintiff") is an Indiana limited liability company ("LLC") whose address is 7743 West Jefferson Boulevard, Fort Wayne, Indiana 46804; however, as an LLC, for diversity jurisdiction purposes under 28 U.S.C. § 1332(a)(2), the citizenship of the LLC is the citizenship of its member.

2.    The sole member of Plaintiff is Steve Cibor.

3.    Steve Cibor is a Florida resident.

4.    Scott M. Wise ("Wise") is an Indiana resident whose address is 7845 Allisonville Road, Indianapolis, Indiana 46250.

5.      Scotty's Holdings, LLC ("Holdings") is an Indiana limited liability company whose address is 3855 East 96th Street, Suite J, Indianapolis, Indiana 46240, and its registered agent is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

6.      The member of Holdings is PRP Scotty's Holdings, LLC and, upon information and belief, perhaps also Wise may have or have a claim to a membership interest in Holdings.

7.      PRP Scotty's Holdings, LLC ("PRP") is a Delaware limited liability company whose address is 15990 N. Greenway-Hayden Loop, Suite 190, Scottsdale, Arizona 85260.

8.      PRP is registered to do business in the State of Indiana and its registered agent in Indiana is CT Corporation System, 150 West Market Street, Suite 800, Indianapolis, Indiana 46204.

9.      Based upon news reporting information involving Due North Holdings, LLC, PRP is a subsidiary of or otherwise owned by Due North Holdings, LLC.

10.     Due North Holdings, LLC is a Delaware limited liability company with a principal address of 17797 N. Perimeter Drive, Suite D111, Scottsdale, Arizona 85255.

11.     Due North Holdings, LLC is owed by Creekside Capital, LLC, a Delaware limited liability company whose address is 9567 E. Chino Drive, Scottsdale, Arizona 85255.

12.     Plaintiff has reason to believe that the membership ownership interests of Creekside Capital, LLC are affiliated with Due North Holdings, LLC and reside in the State of Arizona. According to publicly available information, an individual, Kathryn Blackwell, is an indicated principal in Creekside Capital LLC and Kathryn Blackwell resides in the State of Arizona.

13.     Berekk A. Blackwell ("Blackwell") is a resident of Arizona and may be served at the following address: 14614 N. Kierland Blvd., Suite 120, Scottsdale, Arizona 85254.

14. This matter involves an amount in controversy exceeding $75,000 as the initial investment of Plaintiff as set forth herein and giving rise to the causes of action subject of Plaintiff's Complaint was $300,000.

15. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

16. Holdings owns and operates, *inter alia*, a restaurant and bar location in Fort Wayne, Indiana known as Scotty's Brewhouse and is subject to this Court's personal jurisdiction.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

### General Background and Allegations Common to All Counts

18. The sole owner and manager of Plaintiff is Steve Cibor.

19. In or around early 2014, Wise approached Steve Cibor, who is Plaintiff's representative, about investing in an entity known as Scotty's Brewhouse Carmel, LLC ("Brewhouse").

20. Brewhouse was formed to operate a restaurant and bar located in Carmel, Indiana.

21. Based upon the information and representations provided by Wise, Plaintiff invested Three Hundred Thousand Dollars ($300,000) for 25% ownership interest in Brewhouse.

22. Plaintiff executed a Purchase Agreement for Member Interest in Scotty's Brewhouse Carmel, LLC stated as "executed to be effective as of February 27, 2014" ("Brewhouse Member Purchase Agreement"). This Brewhouse Member Purchase Agreement is attached hereto as **Exhibit A**.

23. The unit interest in Brewhouse purchased by Plaintiff was a security as defined by Indiana Code § 23-19-1-0.2.

24. Wise also induced Jeffrey Shambaugh of Auburn, Indiana to be a minority owner in Brewhouse.

25.     Including Plaintiff, Brewhouse had three (3) equity owners with ownership as follows: Scotty's Holdings, LLC with 70%; Plaintiff with 25%; and Jeffrey Shambaugh with 5%.

26.     Brewhouse did not perform financially as had been projected by Wise.

27.     From and after Plaintiff's investment in Brewhouse, that entity was not profitable and lost a considerable amount of money. Pursuant to the 2014 K-1 tax return issued to Plaintiff, Brewhouse lost money for that year such that Plaintiff's share (representing a 25% interest) of the ordinary business loss was $44,154.00, and further, Plaintiff's capital account in the LLC which started at $300,000 declined by $55,359 in 2014.

28.     With this poor financial performance, in December 2014, Wise referenced the possibility of converting Plaintiff's ownership interest in Brewhouse to a stake in Holdings as stated by Wise, "to protect" Plaintiff's initial investment. Specifically, in a text message to Steve Cibor on December 23, 2014, Wise stated: "I will protect you during this process. We are up $1.4 million company wide. If I have to move you into the holding company level with your equity to protect you I will. We are starting to talk to some private equity firms now. I will make sure this investment pays off for you."

29.     In or around February 2015, Wise approached Plaintiff about the sale of Plaintiff's interest in Brewhouse in exchange for a small equity ownership stake in Holdings. Specifically, in a text message to Steve Cibor on February 10, 2015, Wise stated: "At some point we should talk about moving your equity from the Carmel location into the holding company that owns all the restaurants."

30.     Based upon the information and representations provided by Wise, specifically, that Plaintiff's investment would be protected and that its investment in Brewhouse would "pay off" if Plaintiff acquired an interest in Holdings in exchange for Plaintiff's 25% ownership interest in

Brewhouse, Plaintiff agreed to invest in the ownership of a separate entity known as Scotty's Holdings, LLC ("Holdings").

31.     Wise proposed that the acquisition cost for Plaintiff's investment in Holdings would be the transfer of the Plaintiff's ownership in Brewhouse to Holdings.

32.     Plaintiff agreed to Wise's investment proposal; however, significant time passed before Wise and Holdings presented documents to Plaintiff that would transfer a minority interest in Holdings in exchange for Plaintiff's interest in Brewhouse.

33.     In or around the end of July 2015, Holdings presented to Plaintiff a document referenced as a Purchase Agreement for Member Interest in Scotty's Holdings, LLC with an effective date stated to be January 1, 2015.

34.     Wise sought to have Plaintiff exchange its interest in Holdings with an effective date more than 6 months prior to the date Holdings and Wise provided transaction documents to Plaintiff.

35.     Based upon Wise's representations that effectuating the exchange of Plaintiff's Brewhouse interest for a smaller stake in Holdings would benefit Plaintiff by protecting its original investment and provide a return on it, Plaintiff agreed to Wise's investment proposal and executed both the Purchase Agreement for Limited Liability Company Ownership Units and a Purchase Agreement for Limited Liability Company Ownership Units ("Holdings Ownership Units Purchase Agreement").

36.     The Purchase Agreement for Member Interest in Scotty's Holdings, LLC is attached hereto as **Exhibit B** and the Holdings Ownership Units Purchase Agreement is attached hereto as **Exhibit C**.

37.     The Holdings Ownership Units Purchase Agreement provided for Plaintiff to acquire two hundred (200) ownership units in Holdings constituting a then two percent (2%) interest in Holdings in exchange for Plaintiff assigning all of its right, title and interest in Brewhouse to Holdings. Wise, individually, was the designated seller of the 200 units of Holdings to Plaintiff under the Holdings Ownership Units Purchase Agreement; however, the purchase price, being the assignment of the Brewhouse interest owned by Plaintiff, was remitted to Holdings pursuant to the Purchase Agreement.

38.     Both the Holdings Ownership Units Purchase Agreement (**Exhibit C**) and the Purchase Agreement for Member Interest in Scotty's Holdings, LLC (**Exhibit B**) were stated to be "executed to be effective as of January 1, 2015," and were signed by Plaintiff much later, being in or around August 2015.

39.     Later, in July 2017, Plaintiff was approached by the legal counsel who represented both Wise and Holdings to sign a document entitled "Contribution Agreement for Certain Ownership Units in Scotty's Holdings, LLC" stated to be "executed to be effective prior to the opening of business as January 1, 2015" (the "Holdings Contribution Agreement"). This Holdings Contribution Agreement is attached hereto as **Exhibit D**.

40.     The 200 ownership units in Holdings acquired by Plaintiff was a security as defined by Indiana Code § 23-19-1-0.2.

41.     Accordingly, based upon the information and representations of Wise, Plaintiff became the owner of a minority interest in Holdings consisting of two hundred (200) ownership units which was a two percent (2%) interest as acquired stated to be effective in and around January 2015.

42.     In January 2015, Holdings owned and/or was involved with operating multiple restaurant and bar locations in addition to the Carmel, Indiana location.

43.     In January 2015, Wise was the Manager of the Holdings limited liability company and owned 8,857.8 ownership units in Holdings representing an 88.578% interest.

44.     Accordingly, in January 2015, Wise was the majority owner and controlled the operation and management of Holdings. Further, Wise was the majority owner and controlled the operation and management of Holdings in 2016 when Plaintiff became the owner of 200 units (2% interest) in Holdings.

45.     At the time of Holdings' ownership unit sale to Plaintiff, Wise maintained and represented to Plaintiff that Holdings would continue to grow and provide a return on Plaintiff's investment on it.

46.     Further, Wise represented and stated to Steve Cibor that he would "protect" Plaintiff's investment interest and the investment would be "taken care of" and in the text message to Steve Cibor on February 10, 2015, stated: "Like I said I want to take care of you and my goal is to sell the entire company to private equity in the next couple years. Either way you will get taken care of but I think the payday will be bigger if you are in the holding company instead of a single store level."

47.     From and after the time Plaintiff became the owner of two hundred (200) units of Holdings, Wise provided little information regarding the operation and management of Holdings to Plaintiff.

48.     In or around January 2017, Wise approached Plaintiff about agreeing to an amendment to the buy/sell terms of the previously executed Holdings Ownership Units Purchase Agreement.

49.     In January 2017, to induce Plaintiff to agree to the revised terms for the buy-sell provisions of the Holdings Ownership Units Purchase Agreement, Wise stated to Steve Cibor that a transaction resulting in a change in ownership of Holdings had already been done and that Steve Cibor had to sign documents on account of Plaintiff's ownership in Holdings as a result of this change in ownership.

50.     This change in ownership involved PRP in which PRP became the majority owner of Holdings. On account of this change in ownership transaction which was not disclosed to Plaintiff at the time it occurred, Steve Cibor, representative of Plaintiff, was presented documents on or around January 27, 2017, to sign.

51.     Plaintiff was not presented with all of the documents involved with the ownership change by which PRP became the controlling owner of Holdings and, in fact, Steve Cibor was later informed, in the year following signing the transaction documents in February 2017, that some of the transaction documents were withheld and were still being withheld because of what both Wise and later also Blackwell and PRP stated were "confidentiality provisions" preventing the disclosure to Plaintiff, a minority shareholder in Holdings.

52.     On account of the intentionally limited and incomplete information and representations made by Wise regarding this change in ownership involving PRP that had occurred on February 5, 2017, Plaintiff signed the First Amendment to Purchase Agreement for Member Interest in Scotty's Holdings, LLC ("Holdings First Amendment to Purchase Agreement"). This Holdings First Amendment to Purchase Agreement is attached hereto as **Exhibit E**.

53.     The Holdings First Amendment to Purchase Agreement stated it was "executed to be effective as of November 30, 2016."

54.     Also stated as "executed to be effective as of November 30, 2016" was a document entitled "Second Amended and Restated Limited Liability Company Operating Agreement (Manager-Managed)" for Scotty's Holdings, LLC (the "Holdings Second Amended and Restated Operating Agreement"). This Holdings Second Amended and Restated Operating Agreement is attached hereto as **Exhibit F**.

55.     The Holdings Second Amended and Restated Operating Agreement contained a provision entitled "Call Option Schedule" at Section 2.3 thereof (the "Call Option").

56.     Plaintiff was not provided information about the Holdings Second Amended and Restated Operating Agreement, the Call Option contained therein, the effect thereof, nor that a transaction with PRP had taken place prior to being presented with the documents to sign.

57.     The Call Option provided not only that there was an option for Holdings to redeem all of the LLC member's ownership units (which included Plaintiff's 200 units), but also that this Call Option was, in fact, being exercised by operation of the execution of this Holdings Second Amended and Restated Operating Agreement.

58.     The Call Option provided that the "purchase price" for the membership units was to be a share of net earnings, if any, for five (5) years pursuant to a specific formula set forth in Section 2.3 of the Holdings Second Amended and Restated Operating Agreement.

59.     The Call Option provisions of Section 2.3 of the Holdings Second Amended and Restated Operating Agreement created an evidence of indebtedness or other form of security as defined by Indiana Code § 23-19-1-0.2.

60.     The terms of the Call Option provisions created under the Holdings Second Amended and Restated Operating Agreement ("Call Option Security") provided for payments to

be made to Plaintiff based upon the prospect for an expectation of profits referenced as potential future earnings from the operation of Holdings.

**COUNT I:**
**Wise Violations of Indiana Securities Law – Scotty's Brewhouse, LLC, Investment**

61.     Plaintiff incorporates and realleges paragraphs 1 through 60 as if set forth fully herein.

62.     In and around early 2014, Wise approached Plaintiff to invest in Brewhouse.

63.     Based upon the representations of Wise, Plaintiff invested Three Hundred Thousand Dollars ($300,000.00) for a twenty-five percent (25%) interest in Brewhouse.

64.     In soliciting Plaintiff for investment in Brewhouse, Wise misrepresented that Plaintiff would realize a return on its investment based upon the expected operation and profitability of the Carmel, Indiana restaurant location owned by Brewhouse. During the time of Plaintiff's ownership interest in Brewhouse, the restaurant was not profitable and Wise began as early as December 2014 to encourage Plaintiff to abandon its interest in Brewhouse in favor of a promise to protect and realize a return on Plaintiff's investment by and through a smaller stake in Holdings.

65.     In soliciting Plaintiff to invest in Brewhouse, Wise did not disclose his intention to utilize Plaintiff's investment to fund start-up costs and initial losses so as to benefit Wise's actual goal of expanding the number of restaurants owned and operated by Holdings so that Holdings could grow the size of its operation at the expense of Plaintiff as an early investor in just one of the restaurant locations.

66.     Subsequently, Wise induced Plaintiff to convert its ownership in Brewhouse to a small minority stake in Holdings.

67.     Beginning in 2017, from and after the date Plaintiff was solicited to sign the Holdings First Amendment to Purchase Agreement, Plaintiff determined that based upon subsequent actions by Wise and additional information that had not been previously disclosed and information that remains undisclosed due to the claim of Wise, Blackwell and PRP that it is subject of "confidentiality provisions" concerning transactions involving Holdings, PRP and Blackwell that Plaintiff's investment in Brewhouse was part of a larger scheme of Wise to grow the Holdings enterprise for later profit rather than to operate Brewhouse profitably for a return on Plaintiff's investment as had been originally represented.

68.     Wise induced Plaintiff as an early investor to invest money in the startup of the Brewhouse restaurant without Wise having any intention and/or expectation of profit with respect to Plaintiff's initial investment.

69.     At the urging of Wise and based upon representations thereof, effective in or around January 2015, Plaintiff's interest in Brewhouse was converted to an approximate two percent (2%) interest in Holdings represented by two hundred (200) membership units of Holdings.

70.     Thereafter, Plaintiff's two hundred (200) units in Holdings were then converted by the Holdings Second Amended and Restated Operating Agreement made effective as of November 30, 2016, to yet another investment, the Call Option Security.

71.     The concept presented by Wise of a separate restaurant and bar operated by Brewhouse was a mere artifice to attract investment capital as a part of a larger plan to create numerous restaurants and bar facilities in and outside the State of Indiana which would be combined into the Holdings entity. This scheme, however, was not designed for profit of Brewhouse to benefit Plaintiff as an investor therein, but a larger plan to increase the size and

capitalization of Holdings at the expense of the early investors such as and including Plaintiff in the individual restaurant and bar locations, including that of Brewhouse.

72.    The initial investors in Brewhouse received no return from the Brewhouse investment, but had their equity converted to ownership in Holdings. In turn, this Holdings interest was converted to a worthless security, the Call Option Security, created by the Holdings Second Amended and Restated Operating Agreement. The Call Option Security was structured by its terms to limit the possibility of any payments or return to Plaintiff and, in fact, no payments of any kind have been made to Plaintiff.

73.    In terms and effect, the Call Option Security has resulted in no payments to Plaintiff and has been of no value to Plaintiff. Holdings has not even supplied the required financial information to Plaintiff stated in the Call Option as being required to be supplied by the Holdings.

74.    Wise employed the device of having Plaintiff invest in Brewhouse based upon the promise that Brewhouse would operate profitably and provide a return to Plaintiff based upon the operation of the restaurant and bar owned by Brewhouse in Carmel, Indiana so as to obtain by deception early startup capital for that entity to fund initial losses with the intention of later incorporating that restaurant and bar location started by Brewhouse into Holdings with no return of any kind on Plaintiff's investment.

75.    Brewhouse was never operated profitably during Plaintiff's investment and ownership therein and Wise never intended for Plaintiff to realize a return on its investment in Brewhouse.

76.    Rather, Plaintiff's investment was merely utilized to fund initial losses for the eventual establishment of multiple locations for the Holdings enterprise.

77.     Wise's scheme culminated in or around the end of 2016 or beginning of 2017 with the creation of the worthless Call Option Security that was issued to Plaintiff retroactively in early 2017.

78.     Presently, Holdings now has not less than 17 locations, including the Brewhouse location in Carmel, Indiana. However, Plaintiff's investment has been absconded with, having been converted to a worthless security by the Holdings Seconded Amended and Restated Operating Agreement and the Call Option provisions stated therein.

79.     Wise's scheme to capitalize and increase the size and operations of Holdings without intention or possibility of return to Plaintiff is a violation of Indiana Code § 23-19-5-1.

80.     Accordingly, Plaintiff is entitled to damages against Wise as provided under Indiana Code § 23-19-5-9 including costs and attorney fees.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor and against Wise and for all other relief just and proper in the premises.

## COUNT II:
## Wise – Fraud/Scheme to Defraud Plaintiff of Original $300,000.00 Investment

81.     Plaintiff incorporates and realleges paragraphs 1 through 80 as if set forth fully herein.

82.     Wise's inducement to Plaintiff to invest Three Hundred Thousand Dollars ($300,000) in Brewhouse was part of a scheme to defraud Plaintiff by soliciting such investment without any intention or possibility of return.

83.     Wise solicited the investment from Plaintiff without an intention of pursuing profit or gain for the individual enterprise as to which Plaintiff invested, but rather to benefit Wise's larger design of building the enterprise of Holdings for future profit and gain at the designed expense of Plaintiff as an early investor.

84.     Plaintiff invested Three Hundred Thousand Dollars ($300,000) in or around February 2014 for a twenty-five percent (25%) ownership interest in Brewhouse. This interest in Brewhouse was then converted to a two percent (2%) interest in Holdings in or around January 2015, which interest was then later converted to a worthless security by the Second Amended and Restated Operating Agreement with an effective date of November 30, 2016.

85.     Wise misrepresented the reasons and purpose of the Three Hundred Thousand Dollar ($300,000) investment solicited from Plaintiff when he represented to Plaintiff that Brewhouse was going to operate profitably and provide an investment return to Plaintiff based upon the operation of the restaurant and bar location owned by Brewhouse in Carmel, Indiana.

86.     Rather than being operated for profit and growth or otherwise providing any return on Plaintiff's initial investment, Wise, as Manager of Brewhouse, utilized the funds for funding startup and initial losses so as to further his true intention of providing a mechanism to increase the number of restaurant and bar locations owned and controlled by Holdings. Wise then benefitted from his ownership interest in Holdings and undisclosed agreements involving both PRP and Holdings benefitting him to the detriment of Plaintiff as Plaintiff's interest in Holdings was converted to the worthless Call Option Security.

87.     In fact, Holdings became the sole owner of Brewhouse in 2015 with Wise having induced Plaintiff to transfer its ownership in Brewhouse to Holdings. Brewhouse is now and remains a part of that enterprise.

88.     Wise engaged in fraud against Plaintiff in the inducement of Plaintiff to invest Three Hundred Thousand Dollars ($300,000) into Brewhouse, which interest then was converted ultimately in 2017 to a worthless security, which operated to further Wise's scheme to increase the

size and value of Holdings without providing any return to Plaintiff on Plaintiff's initial investment.

89.     Wise is liable to Plaintiff on account of fraud and damages to Plaintiff as a result thereof.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor against Wise on this Count II and for all other relief just and proper in the premises.

**COUNT III:**
**Wise and Holdings Violation of Indiana Securities Law – Sale of Scotty's Holdings, LLC Unit Interest**

90.     Plaintiff incorporates and realleges paragraphs 1 through 89 as if set forth fully herein.

91.     On December 23, 2014, in a text message Wise stated to Plaintiff's representative, Steve Cibor, that, "I will protect you during this process." Wise further stated in that same text, "If I have to move you into the holding company level with your equity to protect you I will." Wise further pursued Plaintiff regarding the purchase of units in Holdings in February 2015.

92.     Wise solicited Plaintiff for investing in Holdings based upon the representation and promise that by investing in Holdings, Plaintiff's initial investment would be "protected" and that Plaintiff would realize a profitable return on that investment by becoming an owner in Holdings.

93.     Wise represented to Plaintiff that acquiring an interest in Holdings would benefit Plaintiff and provide protection for Plaintiff's investment and interest in Brewhouse.

94.     Wise intended to divest Plaintiff of its ownership interest in Brewhouse.

95.     Wise proposed that the purchase price for the two hundred (200) units in Holdings would be the transfer and assignment of Plaintiff's interest in Brewhouse to Holdings.

96.     In support of this proposal for Plaintiff to acquire two hundred (200) units in Holdings with the purchase price being the transfer of Plaintiff's interest in Brewhouse, Wise provided misleading information to Plaintiff as Wise misrepresented that acquiring the ownership interest in Holdings would protect Plaintiff and provide a return to Plaintiff when in fact, after being provided the documents in late July 2015 and again in July 2016 to effectuate the conversion of Plaintiff's interest in Brewhouse to the 200 units (2% interest) in Holdings, Plaintiff's acquired stake in Holding's was converted to the worthless Call Option Security by the Holding's Second Amended and Restated Operating Agreement with an effective date of November 30, 2016.

97.     Further, as part of the solicitation to Plaintiff to invest in Holdings, Wise did not disclose material information regarding the operations of Holdings, nor any information regarding the potential and eventual conversion of that interest to the Call Option Security.

98.     Even though Wise was the seller under the Holdings Ownership Units Purchase Agreement (**Exhibit C**), the terms of this Purchase Agreement provided for transfer of Plaintiff's Brewhouse ownership to Holdings rather than Wise who was actually the named seller under the Purchase Agreement.

99.     Wise and Holdings, in violation of Indiana Code § 23-19-5-1, induced Plaintiff to invest in Holdings based upon Wise's representations to Steve Cibor, representative of Plaintiff, that becoming an equity owner in Holdings would protect Plaintiff's investment and produce a return on that investment because of the growth of Holdings and the intention as to sell the Holdings investment for a profit.

100.    Holdings participated in the scheme to grow the size of its business at the expense of Plaintiff as it acquired the Plaintiff's interest in Brewhouse for its benefit utilizing the

misrepresentations provided to Plaintiff and participating in and benefitting from the scheme to increase the size of its business by defrauding Plaintiff of its investment capital.

101.    Holdings acquired the Plaintiff's interest in Brewhouse and Plaintiff was issued 200 units (a 2% interest) in Holdings by documents stated as effective January 1, 2015; however, one of the documents related to that transaction was not presented to Steve Cibor for signature until July 2016.  This document presented in July 2016 was the Holdings Contribution Agreement (**Exhibit D**).  Effective approximately four (4) months after receiving the Holdings Contribution Agreement (**Exhibit D**), Holdings then issued to Plaintiff the worthless Call Option Security that dispossessed Plaintiff of its 200 units in Holdings.

102.    Defendants, Wise and Holdings, are liable to Plaintiff for violation of Indiana Code § 23-19-5-1 resulting from and on account of the 200 units in Holdings issued to Plaintiff.

103.    Defendants, Wise and Holdings, are liable to Plaintiff for damages as provided under Indiana Code § 23-19-5-9, including costs and attorney fees.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor against Wise and Holdings as set forth in this Count III and for all other relief just and proper in the premises.

## COUNT IV:
### Wise and Holdings – Fraud/Scheme to Defraud Plaintiff of Ownership in Brewhouse

104.    Plaintiff incorporates and realleges paragraph 1 through 103 as if set forth fully herein.

105.    Wise and Holdings participated in a scheme to defraud Plaintiff of its ownership interest in Brewhouse and transfer it to Holdings.

106.    Holdings acquired Plaintiff's interest in Brewhouse to increase the size of its operations as it added the ownership of Plaintiff in the Brewhouse location to its assets thereby

increasing its operating and balance sheet assets for future profit and accretive value at the expense of Plaintiff as an early investor in Brewhouse.

107.    At the solicitation of Wise, the authorized representative of Holdings, followed by the sale transaction terms put forth by Holdings, Plaintiff purchased two hundred (200) units of Holdings, representing a two percent (2%) interest therein by transferring to Holdings Plaintiff's 25% interest in Brewhouse through the Purchase Agreement with an effective date of January 1, 2015.

108.    Wise and Holdings misrepresented to Plaintiff that acquiring a small minority stake in Holdings would protect and provide a profitable return on Plaintiff's initial investment in Brewhouse. Wise and Holdings required that Plaintiff exchange its 25% interest in Brewhouse to obtain a 2% interest in Holdings.

109.    Rather than allow Plaintiff to then retain its two hundred (200) units in Holdings which was the entity Wise was focused on growing for his long-term benefit, Wise and PRP, a subsequent investor in Holdings, constructed, executed and implemented a Second Amended and Restated Operating Agreement of Holdings whereby all minority interests, including that of Plaintiff, were exchanged for the Call Option Security.

110.    Plaintiff has received nothing from or on account of the Call Option Security. In design and operation, the formula for payments from future profits for a five (5) year period under the Call Option Security has produced no payments to Plaintiff.

111.    By the artifice constructed by Wise, furthered by Holdings and eventually aided by PRP, Plaintiff invested Three Hundred Thousand Dollars ($300,000.00) for a twenty-five percent (25%) interest in Brewhouse that was converted to a two percent (2%) (200 units) interest in Holdings which, in turn, after Steve Cibor was presented documents to convert Plaintiff's interest

in Brewhouse to a 2% stake in Holdings, this 2% stake in Holdings was converted to the Call Option Security.

112.    The Call Option Security was a security based upon a formula premised upon profits to be generated by Holdings for five (5) consecutive years.

113.    There have been no profits and the Call Option Security was constructed and implemented by Wise, Holdings, PRP and its Manager, Blackwell, so that no money would be generated for or on behalf of Plaintiff on account of his interest in that Call Option Security.

114.    In fact, based upon financial information prepared by accountants for Holdings for the year 2017, PRP is receiving a substantial management fee from Holdings, for the management of certain restaurants owned and operated by Holdings. Additionally, Pots and Pans Production, LLC, an entity in which Wise is believed to have an ownership interest, also has provided management and accounting services to nine (9) of the restaurant locations since the date of the Holdings Second Amended and Restated Operating Agreement.

115.    Despite the fact that Wise, Holdings, PRP and Blackwell have made known to Plaintiff that nothing was owing to Plaintiff under the Call Option Security, no audited financials as required by the terms of the Call Option Security have been provided to Plaintiff.

116.    Holdings is and has been operated with the focus upon the growth of the business at the expense of any profits such that the Call Option Security has no value.

117.    Defendants, Wise and Holdings, acted and conspired to dispossess Plaintiff of its ownership interest in Brewhouse so that interest could be and was transferred to Holdings in furtherance of the scheme to grow the size and value of that entity at the expense of Plaintiff as an owner and early investor in Brewhouse. In turn, that 2% interest in Holdings was then later converted to the worthless Call Option Security.

118.     Defendants, Wise and Holdings, are liable for fraud for the scheme to abscond with Plaintiff's ownership interest in Brewhouse (originally acquired by Plaintiff for Three Hundred Thousand Dollar ($300,000.00)), leaving it ultimately with nothing but a worthless security, the Call Option Security, tied to an earnings profitability formula known by Defendants to have no value in its intended implementation as well as at the time of its creation with the issuance thereof in the Holdings Second Amended and Restated Operating Agreement, specifically Section 2.3 therein.

119.     Defendants, Wise and Holdings, are liable for damages to Plaintiff on account of its fraudulent scheme to take and abscond with Plaintiff's original investment and its ownership interest in Brewhouse.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor and against Wise and Holdings as set forth in this Count IV and for all other relief just and proper in the premises.

### COUNT V:
### Wise, Holdings, PRP and Blackwell Violation of Indiana Securities Law – Issuance of Call Option Security Tied to "Profits" of Scotty's Holdings, LLC

120.     Plaintiff incorporates and realleges paragraphs 1 through 119 as if set forth fully herein.

121.     Wise and Holdings presented to Plaintiff a First Amendment to Purchase Agreement for a Member Interest in Scotty's Holdings, LLC (**Exhibit E**) that was signed by Steve Cibor, representative of Plaintiff, on February 5, 2017. Plaintiff entered into this Agreement based upon representations and statements from Wise that an equity sale transaction in Holdings involving PRP had already taken place and that Steve Cibor had to sign this Agreement (**Exhibit E**) on account of that.

122.     Further, when soliciting Plaintiff to enter into the Holdings First Amendment to Purchase Agreement, Wise did not disclose that as part of this transaction that Holdings had or would be entering into a management contract with PRP; a management contract with Pots & Pans Production, LLC (an entity in which Wise is believed to have an ownership interest); an employment agreement with Wise and further whether Wise would retain an equity position in Holdings, nor was there any disclosure of payment to Wise on account of his equity ownership on account of the PRP transaction.

123.     Subsequently in the year following being presented with the First Amendment to Purchase Agreement and Holdings Second Amended and Restated Operating Agreement and Plaintiff's signing thereof, Plaintiff learned there were additional documents and/or agreements entered into by and/or between Wise, Holdings & PRP as part of the PRP transaction with Holdings involving the Holdings Second Amended and Restated Operating Agreement that were not disclosed and have not been disclosed to Plaintiff. Wise, Blackwell, and PRP represented to Plaintiff such documents and/or agreements are subject to "confidentiality" provisions and have not disclosed them to Plaintiff.

124.     In conjunction with and by a document bearing the same date as the First Amendment to Purchase Agreement, Blackwell, in the capacity of Executive Manager of PRP, executed the Second Amended and Restated Operating Agreement for Holdings, which contained the Call Option at Section 2.3 thereof.

125.     The Call Option converted Plaintiff's two hundred (200) units into Holdings' promise to pay a percentage of earnings as defined in the Agreement for a period of five (5) consecutive years based upon a formula set forth in the Call Option.

126.    The Call Option payout formula was based upon profits to be derived by the operation of Holdings as managed by Blackwell as Executive Manager and Wise as Manager.

127.    The Call Option created an evidence of indebtedness or other form of security, the Call Option Security that was issued to Plaintiff in exchange for Plaintiff's two hundred (200) units in Holdings.

128.    The issuance of the Call Option Security furthered the scheme of Wise to obtain investment capital from Plaintiff without the intention of having Plaintiff realize any gain, profit or return on such investment, nor receipt back of any of the investment made.

129.    Wise is liable to Plaintiff for violation of Indiana Code § 23-19-5-1.

130.    PRP entered into and effectuated the Holdings Second Amended and Restated Operating Agreement with the Call Option contained therein as a Member of Holdings and, accordingly, issued the Call Option Security.

131.    Blackwell executed the Agreement as Executive Manager of PRP and Blackwell is shown and stated as Executive Manager of Holdings under the Second Amended and Restated Operated Agreement.

132.    Holdings entered into material agreements that PRP and Blackwell did not disclose to Plaintiff including a management contract for PRP to provide management services to Holdings, a management contract for Pots & Pans Productions, LLC to provide management and accounting services to Holdings and an employment agreement between Holdings and Wise.  Nor did Wise, Holdings, PRP or Blackwell disclose equity retained by Wise and/or any payments to Wise on account of his equity ownership in Holdings.

133.    Holdings, Wise, PRP and Blackwell discussed, planned and constructed the Call Option Security based upon information that was not provided to Plaintiff and executed material agreements that were not disclosed to Plaintiff prior to the issuance of the Call Option Security.

134.    Holdings, Wise, PRP and Blackwell utilized the Call Option Security to further the scheme to defraud Plaintiff whereby Plaintiff's investment in Brewhouse was converted, ultimately, to the worthless Call Option Security that had no prospect for return or payment of any kind as that Call Option Security was designed and has been manipulated and implemented by Wise, Holdings, PRP and Blackwell.

135.    In addition to Wise, Holdings, PRP and Blackwell are liable to Plaintiff for violation of Indiana Code § 23-19-5-1 in the issuance of the Call Option Security as well as the related actions resulting in Plaintiff's loss of its ownership interest in Holdings.

136.    Defendants, Wise, Holdings, PRP and Blackwell, are liable for damages to Plaintiff on account of their violation of Indiana Code § 23-19-5-1, including costs and attorney fees.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor and against Wise and Holdings as set forth in this Count V and for all other relief just and proper in the premises.

**COUNT VI:**
**Wise, Holdings, PRP and Blackwell – Fraud/Scheme to Defraud**
**Plaintiff of Its Interest in Holdings**

137.    Plaintiff incorporates and realleges paragraphs 1 through and including 136 as if set forth fully herein.

138.    Wise, Holdings, PRP and Blackwell engaged in a scheme to issue a worthless security to Plaintiff and in so doing did also further the Wise artifice to defraud Plaintiff as an early investor in Brewhouse. The issuing of the Call Option Security ensured that Plaintiff's interest in

two hundred (200) units (2% interest) in Holdings (obtained in exchange for Plaintiff's Brewhouse interest) would be terminated with no payment of any kind to Plaintiff.

139.    After Plaintiff was contacted to sign documents converting its interest in Brewhouse to a 2% interest in Holdings (with the first documents including the Purchase Agreement for Member Interest in Scotty's Holdings, LLC and the Holdings Ownership Units Purchase Agreement presented in July 2015 and the subsequent Holdings Contribution Agreement presented in July 2016); Wise, PRP, Blackwell and Holdings executed documents with an effective date of November 30, 2016, that cancelled Plaintiff's interest in Holdings and replaced it with the worthless Call Option Security.

140.    In fact, Steve Cibor, representative of Plaintiff, was not even informed until in or around January 2017 of the transaction between Holdings and PRP resulting in PRP obtaining the majority ownership interest in Holdings (believed to be 95% ownership) that had an effective date of November 30, 2016, as described and set forth in the Holdings Second Amended and Restated Operating Agreement.

141.    Wise, PRP, Blackwell and Holdings failed to disclose material agreements involving management contracts with Holdings involving PRP and Pots & Pans Productions, LLC, nor did they disclose a Wise employment contract, any equity position to be retained by Wise following the issuance of the Call Option Security cancelling Plaintiff's ownership interest in Holdings, or payment to Wise resulting from the Holdings transaction with PRP in or around November 30, 2016.

142.    The Second Amended and Restated Operating Agreement which created the Call Option Security was executed by Blackwell as Executive Manager of PRP, a Member of Holdings, to be effective as of November 30, 2016.

143.     Wise, Blackwell, Holdings and PRP designed and constructed the Call Option Security created by the Second Amended and Restated Operating Agreement.

144.     Defendants, Wise, Holdings, PRP and Blackwell, are liable to Plaintiff for fraud on account of the scheme to issue a worthless security to Plaintiff and effectively dispossess him of his ownership interest in Holdings.

145.     Accordingly, Defendants, Wise, Holdings, PRP and Blackwell, are liable for damages to Plaintiff on account of the scheme to defraud Plaintiff out of his investment and ownership interest in Holdings.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor against Wise, Holdings, PRP and Blackwell as set forth in this Count VI and that Plaintiff have all other relief just and proper in the premises.

## COUNT VII:
### Breach of Fiduciary Duty

146.     Plaintiff incorporates and realleges paragraphs 1 through and including 145 as if set forth fully herein.

147.     At the time of the transaction involving PRP regarding the entry into the Second Amended and Restated Operating Agreement, Wise was Manager of Holdings and also a co-owner thereof, owning a majority ownership interest in the limited liability company.

148.     Also at this time during which Wise was the majority owner and manager of Holdings, Holdings was a closely held business entity with few shareholders (members) and whose equity interests were not traded in securities markets and which were subject to transfer restrictions.

149.     Wise had a fiduciary duty to the interest holders of Holdings, including Plaintiff.

150.     Wise executed the Holdings First Amendment to Purchase Agreement (**Exhibit E**) on behalf of Holdings as the manager thereof. This First Amendment to Purchase Agreement acknowledged and gave effect to the terms of the Holdings Second Amended and Restated Operating Agreement whereby Plaintiff's 200 unit interest in Holdings were cancelled and replaced with the Call Option Security.

151.     The Second Amended and Restated Operating Agreement and the transactions involving PRP beginning at or around November 30, 2016, surrounding the same benefitted Wise, but resulted in Plaintiff losing its ownership interest in Holdings.

152.     Through the transaction with PRP that required execution of the Holdings First Amendment to Purchase Agreement and the Second Amended and Restated Operating Agreement, Wise obtained additional investment funds for Holdings in the amount of approximately Ten Million Dollars ($10,000,000) from PRP to further the operation and development of Holdings. Those funds were used, among other things, to pay existing debts of Holdings and resulted in the benefit of payment to Wise on account of his majority ownership in Holdings prior to the PRP transaction. Wise did not and has not fully disclosed to Plaintiff the amount of payment and benefits he received in the PRP transaction.

153.     Among other benefits, in utilizing the PRP funds, Wise was able to obtain a release of his personal guarantees of Holdings debt.

154.     Further, Wise obtained an employment contract with Holdings inuring to his personal benefit.

155.     In addition, as part of the arrangement with PRP, Holdings entered into a management contract whereby Pots & Pans Production, LLC, an entity in which Wise is believed

to have an interest, received payments for management and accounting services to approximately nine (9) of the Holdings restaurant locations.

156.    Neither the use of the funds from PRP, the employment contract of Wise with Holdings following the PRP unit acquisition, nor the management contract of the Pots & Pans Production, LLC entity were disclosed to Plaintiff prior to the Plaintiff's execution of the Holdings First Amendment to Purchase Agreement. Such lack of disclosure was material.

157.    Wise utilized his position as majority owner in Holdings to obtain personal advantages not available to or otherwise benefitting the minority interest holders, including Plaintiff. Instead, Wise, in conjunction with PRP and Blackwell, structured an investment transaction whereby PRP would assume control of the ownership and management of Holdings and dispossess the Plaintiff and other minority owners of their unit interests in Holdings for no money or payments of any kind excepting only consideration for Wise.

158.    Rather than benefit in any way from the transaction involving PRP, Plaintiff was issued the worthless Call Option Security.

159.    Wise is liable to Plaintiff for breach of fiduciary duty stemming from Wise's action in entering into the transaction with PRP that benefitted Wise individually, but dispossessed Plaintiff of his ownership interest in Holdings and replaced it with the worthless Call Option Security.

160.    Wise is liable to Plaintiff for his breach of fiduciary duty and damages resulting therefrom.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment against Wise on this Count VII and that Plaintiff have all other relief just and proper in the premises.

## COUNT VIII:
### Civil Conspiracy to Breach Fiduciary Duty – PRP and Blackwell

161.    Plaintiff incorporates and realleges paragraphs 1 through 160 as if set forth fully herein.

162.    Blackwell executed the Second Amended and Restated Operating Agreement as Executive Manager of PRP, a Member of Holdings, following the deal agreed upon with Wise for the investment of Ten Million Dollars ($10,000,000) into Holdings. The details of such investment, together with all agreements involving Holdings, PRP and Wise were not disclosed to Plaintiff.

163.    Wise breached his fiduciary duty to Plaintiff as Wise, the majority equity owner of Holdings, entered into agreements and undertook transactions with Holdings for his personal advantage and to the detriment of Plaintiff and minority owners of Holdings.

164.    Blackwell and PRP knew of both the ownership stakes of the Plaintiff and other minority holders, as well as the benefits to be given to Wise in the transaction. Further, both Blackwell and PRP knew of Wise's majority ownership in Holdings prior to the entry into the transaction creating the Call Option Security with the execution of the Second Amended and Restated Operating Agreement for Holdings.

165.    As a condition to investing in Holdings, PRP and Blackwell furthered the scheme to dispossess Plaintiff's ownership in Holdings and replace it with the worthless Call Option Security.

166.    In executing the Second Amended and Restated Operating Agreement containing the Call Option Security provisions, Blackwell, acting for and on behalf of PRP, was aware of the terms thereof, as well as the business plan for Holdings as undertaken that would result in no payments to Plaintiff under the Call Option Security payment formula.

167.    The Call Option Security issued by Holdings at the execution of the Agreement by Blackwell on behalf of PRP furthered the scheme of Wise to dispossess Plaintiff of his ownership in Holdings and render its initial investment worthless.

168.    Blackwell and PRP knowingly and willingly aided and assisted Wise in his actions in which Wise utilized his majority ownership position in Holdings to benefit himself to the expense and detriment of Plaintiff.

169.    Blackwell and PRP knew of the provisions creating the worthless Call Option Security, agreed to the terms thereof and also agreed to substantially assist Wise in dispossessing Plaintiff of its ownership interest in Holdings. Blackwell and PRP also knew of the other benefits inuring to Wise individually, including without limitation, continued ownership and employment with Holdings while requiring the minority interest holders in Holdings, including Plaintiff, to be dispossessed of their ownership interest for the worthless Call Option Security created by the Second Amended and Restated Operating Agreement.

170.    Blackwell and PRP are jointly and severally liable to Plaintiff for civil conspiracy in their role of knowingly and substantially assisting Wise in his breach of fiduciary duty to Plaintiff and for the damages to Plaintiff resulting therefrom.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in favor of Plaintiff against Defendants, Blackwell and PRP, on this Count VIII and that Plaintiff have all other relief just and proper in the premises.

**COUNT IX:**
**<u>Wise, Holdings and PRP Violation of Indiana Securities Law – Failure to Register</u>**

171.    Plaintiff incorporates and realleges paragraphs 1 through and including 170 as of set forth fully herein.

172.    Wise, Holdings and PRP discussed, designed and executed documents resulting in the issuance of the Call Option Security.

173.    As part of the Call Option Security and the issuance of a majority interest in Holdings to PRP, PRP invested Ten Million Dollars ($10,000,000) into Holdings.

174.    Holdings, Wise and PRP designed and entered into a securities transaction presented to and executed by Plaintiff in early 2017, but made effective on or around November 30, 2016 ("Securities Transaction"), which had the following elements:

> a.    PRP invested Ten Million Dollars ($10,000,000) for a majority ownership in Holdings; and
>
> b.    The then-existing minority unit holders, including Plaintiff, as owner of two hundred (200) units, had such ownership converted to the Call Option Security issued by Holdings.

175.    The majority ownership transfer and the Call Option Security issued were part of a single integrated transaction as the Ten Million Dollar ($10,000,000) investment with concomitant majority ownership issuance to PRP was conditioned upon, integral to, and combined with the issuance of the Call Option Securities by Holdings.

176.    PRP is a Delaware limited liability company with its business address in Arizona. It is not organized under the laws of Indiana and is not an Indiana business entity.

177.    PRP was not present in Indiana prior to and at the time of the issuance of the Securities Transaction.

178.    Holdings, by Wise as then Manager, filed a Form D dated December 31, 2015, with the U.S. Securities and Exchange Commission (the "Form D") claiming a federal exemption pursuant to Rule 506(b). This Form D is attached hereto as **Exhibit G**.

179. However, the Form D stated the following:

| | |
|---|---|
| Total Offering Amount | $1,175,000 |
| Total Amount Sold | $1,175,000 |
| Total Remaining to be Sold | $0 |

180. Further, the Form D which is dated December 31, 2015, provides that the Issuer, Holdings, did not intend this offering to last more than one year. The date of the first sale is stated in the Form D as December 31, 2015.

181. In addition, Holdings by Wise represented in the Form D that the offering subject thereof was not being made in connection with a business combination transaction, such as a merger, acquisition, or exchange offer.

182. The Securities Transaction had characteristics including the following that were different from and not as described in the Form D:

a. The Securities Transaction involved a dollar amount invested including $10 Million Dollars which was far greater than the Form D amount referenced.

b. The Securities Transaction was issued by a document, the Second Amended and Restated Operating Agreement, stated to be made effective November 30, 2016, but not signed by Plaintiff until February 5, 2017, which occurred more than one year after the date referenced in the Form D.

c. The Securities Transaction involved the exchange of minority owners' interests, including that of Plaintiff, for the Call Option Security provided for in the Second Amended and Restated Operating Agreement as well as the acquisition by PRP of the majority interest in Holdings.

183. The Form D did not cover, relate to, or otherwise properly apply to the Securities Transaction.

184. Holdings did not register the securities issued under the Securities Transaction as required by Indiana securities law, Indiana Code § 23-19-3-1, *et seq.*

185.    Holdings is liable to Plaintiff for damages, costs and attorney fees pursuant to Indiana Code § 23-19-5-9 as a result of the violation of the failure to register the securities issued in the Securities Transaction.

186.    PRP, serving as Executive Manager and Member of Holdings in the execution of the Second Amended and Restated Operating Agreement that issued the Call Option Security portion of the Securities Transaction, is jointly and severally liable to Plaintiff pursuant to Indiana Code § 23-19-5-9(d) for damages, costs and attorney fees under Indiana Code § 23-19-5-9.

187.    With the execution of the Second Amended and Restated Operating Agreement, PRP became the majority owner of Holdings in conjunction with the issuance of the Call Option Security. Wise was Manager of Holdings and an employee thereof or otherwise associated with Holdings and PRP was the Executive Manager of Holdings. Wise and PRP are jointly and severally liable to Plaintiff pursuant to Indiana Code § 23-19-5-9(d) for damages, costs and attorney fees under Indiana Code § 23-19-5-9.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in its favor against Wise, Holdings and PRP as set forth in this Count IX and that Plaintiff have all other relief just and proper in the premises.

Respectfully submitted,

HALLER & COLVIN, PC

/s/ Scot T. Skekloff
Scot T. Skekloff (#15849-02)
444 E. Main Street
Fort Wayne, IN 46802
Telephone: (260) 426-0444
Facsimile: (260) 422-0274
E-mail: sskekloff@hallercolvin.com
Attorney for Plaintiff