# **EXHIBIT "A"**

## PURCHASE AGREEMENT
## FOR MEMBER INTEREST IN
## SCOTTY'S BREWHOUSE CARMEL, LLC

THIS PURCHASE AGREEMENT is executed to be effective as of February 27, 2014 (the "Effective Date"), by and among SCOTTY'S HOLDINGS, LLC, an Indiana limited liability company (hereinafter referred to as "Holdings"); NAIRAMAT INVESTMENTS, LLC, an Indiana limited liability company (hereinafter referred to as "Member") and SCOTTY'S BREWHOUSE CARMEL, LLC, an Indiana limited liability company (hereinafter referred to as the "Company").

### Recitals:

A. Member is the owner of a twenty-five percent (25%) member interest in the Company and Holdings is the owner of a seventy percent (70%) member interest in the Company.

B. So that continuity in the management of the affairs of the Company can be assured, Holdings, Member and the Company desire to provide for, among other things: (i) the option to purchase of any or all of the member interest in the Company (the "Interest") now owned or hereafter acquired by Member, in the event that Member desires or involuntarily is required to sell, gift, assign, pledge or otherwise transfer or encumber any of Member's Interest in the Company without the consent of Holdings; and (ii) tag-along and drag-along rights.

### Agreements:

In consideration of the foregoing Recitals and the mutual agreements hereinafter set forth, the parties agree as follows:

1

1. <u>General Prohibition Against Transfer of Interest.</u> Without the prior written consent of Holdings, Member shall not sell, gift, bequeath, assign, pledge or otherwise transfer or encumber, voluntarily or involuntarily, any of Member's Interest in the Company, except as set forth below in Sections 2 or 3.

2. <u>Sale or Encumbrance of Interest During Lifetime.</u> If Member should at any time during Member's lifetime: (a) desire to sell, assign, pledge, gift or otherwise transfer or encumber or (b) involuntarily be required to transfer (e.g., in connection with any judgment, divorce or bankruptcy) any or all of Member's Interest in the Company (hereinafter, in this Section 2 and in Sections 4 and 5, the "Subject Interest") without the prior written consent of Holdings, then Member shall first offer in writing to sell the Subject Interest to the Company at the price and on the terms specified in Sections 4 and 5 of this Agreement (the "Offer"). If the Company rejects the Offer, or does not accept the Offer within sixty (60) days after the date of making of the Offer (the "Offer Date"), then the Offer shall promptly be made by Member to Holdings. If Holdings rejects the offer, or if Holdings does not accept the Offer within thirty (30) days after its receipt, then Member may [not sooner than the first (1st) to occur of (x) both the Company and Holdings rejecting the offer or (y) ninety (90) days—but within one hundred fifty (150) days—after the Offer Date] sell, gift, assign, pledge or otherwise transfer or encumber the Subject Interest, subject to the following provisions of this Section 2. Each and any subsequent transfer or encumbrance of any Interest in the Company by any holder of the Subject Interest (i.e., by any immediate or remote successor/transferee of Member's Interest) shall also be subject to the provisions of this Agreement (and any reference herein to "Member" shall mean and refer to such successor/transferee). Any decision by the Company to accept any offer

2

hereunder shall require the affirmative approval of the other Members then holding a majority of the other Ownership Percentages of the Company.

3. <u>Death of Member's Sole Member.</u> In the event of the death of the sole member of Member, Member's heirs, beneficiaries or personal or legal representatives ("Member's Estate"), as applicable, shall automatically be deemed to have offered to sell all of Member's Interest in the Company (hereinafter, in this Section 3 and in Sections 4 and 5, the "Subject Interest") to the Company at the price and on the terms specified in Sections 4 and 5 of this Agreement (the "Offer"), effective as of the date of Member's death (the "Offer Date"). If the Company rejects the Offer, or does not accept the Offer within sixty (60) days after the Offer Date, then the Offer shall automatically be deemed to have been made by Member's Estate to Holdings. Any decision by the Company to purchase the Subject Interest shall require the affirmative approval of other Members then holding a majority of the other Ownership Percentages of the Company.

4. <u>Purchase Price.</u> The purchase price (the "Purchase Price") for the Subject Interest to be purchased under Section 2 or 3 of this Agreement shall be determined by the agreement of Holdings and Member (or Member's Estate, as applicable). Should Holdings and Member fail to agree upon a Purchase Price within thirty (30) days following the Offer Date, then the Purchase Price shall be the average of the value of the Subject Interest as of the Offer Date as established by two (2) appraisals, which appraisals shall be completed within sixty (60) days after the Offer Date by an independent and accredited appraiser selected and engaged by each of Member and Holdings; provided, however, that if such appraisals shall differ by greater than twenty-five percent (25%), then Member and Holdings shall select and engage a third independent and accredited appraiser, with the cost of such appraisal to be split between Member and Holdings, within thirty (30) days after receipt of the first two (2) appraisals, to value the Subject Interest,

3

which appraisal shall be delivered within thirty (30) days after the selection by Member and Holdings of such appraiser. The determination of the third appraiser shall be final, binding and conclusive. Each appraisal specified above shall be prepared in accordance with acceptable appraisal methods and taking into consideration all appropriate discounts (for example, discounts for lack of marketability and/or lack of control).

5. <u>Terms and Conditions</u>. The following provisions shall be applicable with respect to any purchase of the Subject Interest:

(a) <u>Acceptance or Termination of Offer</u>. All offers made pursuant to Section 2 or 3 shall be irrevocable and, unless sooner accepted, shall terminate either at the expiration of the applicable option period or when rejected prior thereto in writing. If accepted, an offer must be accepted with respect to all of Subject Interest which is offered and may not be accepted with respect to less than all of such interests and rights.

(b) <u>Consummation of Purchase</u>. Any purchase contemplated in Section 2 or 3 of this Agreement must be consummated on a mutually-acceptable date which is within ninety (90) days after the Offer Date.

(c) <u>Payment of Purchase Price</u>. The total Purchase Price determined under Section 4 of this Agreement shall be paid pursuant to the terms and conditions of a promissory note in the form attached hereto as <u>Exhibit "A"</u>, which promissory note (A) shall be executed by the purchaser of the Subject Interest; (B) shall have a term of five (5) years; (C) shall be payable in equal annual installments; (D) shall bear interest at the prime rate published in The Wall Street Journal on the closing date; and (E) shall provide that the first payment shall be due and payable one (1) year after the Offer Date.

6. <u>Tag-Along Rights</u>. Notwithstanding any provision of this Agreement to the contrary, in the event that Holdings proposes to transfer greater than fifty percent (50%) of the member interests in the Company ("Holdings' Interest") to a third party, then Holdings shall refrain from effecting such transaction unless, prior to the consummation thereof, Member shall have been afforded the opportunity to join in such transfer on a pro rata basis, as hereinafter provided. Any purported transfer subject to this Section 6 not made in compliance with this Section 6 shall be void.

Prior to the consummation of any transaction described above in this Section 6, Holdings shall cause each person that proposes to acquire Holdings' Interest in the transaction (the "Tag-Along Purchaser") to offer (the "Tag-Along Offer") in writing to Member to purchase a portion of the member interest in the Company owned by Member equal to: (a) the member interest that Holdings proposes to transfer; divided by (b) one hundred (100); multiplied by (c) the total member interest in the Company owned by Member; at the same price per one percent (1%) member interest, and on such other terms and conditions, as the Tag-Along Purchaser has offered to purchase the member interest to be sold by Holdings. Member shall have ten (10) days from the receipt of the Tag-Along Offer in which to accept or reject the Tag-Along Offer, and, to the extent Member accepts such Tag-Along Offer in accordance with the terms hereof, the member interest to be sold by Holdings shall be reduced by the portion of Member's member interest to be purchased by the Tag-Along Purchaser (unless the Tag-Along Purchaser agrees to purchase all of the member interest proposed to be sold by Holdings in addition to the member interest to be sold by Member).

In the event that a transfer subject to this Section 6 is proposed to be made to a person other than a member of the Company, Holdings shall notify such person that the transfer is subject to this Agreement and shall ensure that no transfer is consummated without compliance with this Section 5.

7. <u>Drag-Along Rights</u>. Notwithstanding any provision of this Agreement to the contrary, in the event that Holdings proposes to transfer all of the member interest in the Company owned by it to an unrelated third party purchaser (a "Drag-Along Purchaser"), then, upon Holdings' request, Member agrees to transfer all of the member interest in the Company

owned by Member to the Drag-Along Purchaser in the manner and on the terms set forth in this Section 6 (a "Drag-Along Sale").

If Holdings elects to exercise its rights under this Section 7, then Holdings shall furnish a written notice (a "Drag-Along Notice") to Member. The Drag-Along Notice shall set forth the principal terms of the proposed Drag-Along Sale, including the name of the Drag-Along Purchaser and the consideration per one percent (1%) member interest to be received by Holdings in the proposed Drag-Along Sale. If Holdings consummates the proposed Drag-Along Sale, then Member shall be bound and obligated to transfer all of the member interest in the Company held by Member to the Drag-Along Purchaser in the Drag-Along Sale on the same terms and conditions, including, without limitation, the purchase price per one percent (1%) member interest payable to Holdings for the member interest transferred by Holdings to the Drag-Along Purchaser in the Drag-Along Sale; provided, however, the form of consideration payable to Member for the member interest transferred by Member to the Drag-Along Purchaser in the Drag-Along Sale shall be determined by Member and the Drag-Along Purchaser.

8. <u>Nonconformance</u>. Any attempted sale, gift, assignment, pledge or other transfer or encumbrance by Member which is not in conformity with the preceding provisions of this Agreement shall be void and of no force or effect.

9. <u>Transfer of Interest and Rights</u>. Upon receipt of the payment, as provided in Section 5(c) of this Agreement, by, as applicable, Member or Member's Estate, as applicable, Member or Member's Estate, as applicable, shall cause the Interest purchased to be assigned and transferred properly and conveyed free and clear of all liens, claims and encumbrances, together with any and all other documents necessary to carry out the terms of this Agreement.

10. <u>Termination of Agreement</u>. This Agreement shall terminate upon the occurrence of any of the following events:

    (a)    The dissolution or the termination of the existence of the Company; or

    (b)    The execution by all of the parties to this Agreement of a written agreement to terminate this Agreement.

No such termination shall affect any liability or obligation theretofore accrued hereunder; for instance, in the event of the termination of this Agreement at such time as the full amount of the purchase price has not been paid for any Interest of the Company purchased or required to be purchased hereunder, then such termination shall not affect any such unpaid obligation.

11. <u>Remedies for Enforcement of Agreement</u>. In the event that a party or parties hereto breaches any term or condition of this Agreement, the non-breaching party or parties shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement, to enforce the specific performance hereof or to enjoin the violation of the terms of this Agreement. In any such action, the prevailing party or parties shall be entitled to recover such party's attorneys' fees and costs incurred in such action from the losing party or parties.

12. <u>Notices</u>. All notices, elections, offers, acceptances, or other communications permitted or required hereunder shall be in writing and shall be effective when mailed within the State of Indiana, certified or registered United States mail, postage prepaid, return receipt requested, as follows:

| | |
|---|---|
| if to the Company at: | 3855 East 96th Street, Suite J<br>Indianapolis, Indiana 46240 |
| if to Holdings at: | 3855 East 96th Street, Suite J<br>Indianapolis, Indiana 46240 |
| if to Member at: | 7743 West Jefferson Boulevard<br>Fort Wayne, Indiana 46804 |

or to such other address(es) within the State of Indiana as shall be designated by written notice(s) hereunder.

13. <u>Amendment</u>. This Agreement may be amended only by a writing signed by all of the parties hereto.

14. <u>General</u>. All interests owned by a party to this Agreement, whether acquired before or after the execution of this Agreement, shall be subject to all of the terms and conditions of this Agreement. Except as assignment is prohibited or restricted hereunder, this Agreement shall inure to the benefit of and be binding upon all of the parties hereto and their respective successors, assigns, heirs, beneficiaries and personal and legal representatives. This Agreement shall be subject to, governed by and construed in accordance with the laws of the State of Indiana, irrespective of the residence of the parties. In the event any provision of this Agreement shall conflict with any provision of the Articles of Organization and/or the Operating Agreement of the Company, then such provision of this Agreement shall control.

[Signatures appear on the following page.]

Hooser   IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first written above.

SCOTTY'S HOLDINGS, LLC

By: _____
Scott M. Wise, Manager

"Holdings"

NAIRAMAT INVESTMENTS, LLC

By: _____
Steve Cibor, Member

"Member"

SCOTTY'S BREWHOUSE
CARMEL, LLC

By: _____
Scott M. Wise, Manager

"Company"

EXHIBIT "A"
TO
PURCHASE AGREEMENT

Form of Promissory Note

$_____                                        _____, _____

     FOR VALUE RECEIVED, the undersigned, _____, promises to pay to the order of _____ on or before _____, ____, and at the times and in the manner hereinafter specified, the principal sum of _____ and ___/100 Dollars ($_____), with interest on the principal balance from time to time remaining unpaid at the rate of _____ percent (____%) per annum. The principal amount of this Note shall be payable in five (5) equal, consecutive annual installments on the _____ (____) day of _____, commencing on _____, ____ and continuing through _____, _____, with each installment equal to one-fourth (1/4) of the original principal amount hereof. Accrued and unpaid interest shall be due and payable at each time an installment of principal is due and payable. Maker shall pay interest at the rate per annum which is two percent (2%) above the rate specified hereinabove with respect to any amounts not paid when due, together with costs of collection and reasonable attorney's fees. All amounts payable or with respect to this note shall be payable without relief from valuation or appraisement laws.

     This note is payable at _____, _____, _____, and is given to evidence the unpaid balance of the purchase price of a certain member interest in Scotty's Brewhouse Carmel, LLC, sold by the payee hereof to the maker hereof. Presentment, notice of dishonor and demand, protest and diligence in collection and bringing suit are hereby severally waived by the maker and each endorser who hereby severally consent that the time for the payment of this note or of any installment hereunder may be extended from time to time without notice by the holder.

     The holder of this note, at the holder's option and without notice, may declare the entire unpaid balance hereof (principal and accrued interest) immediately due and payable upon any default in the payment of any principal or interest hereunder, and a failure to cure such default within thirty (30) days after written notice thereof by the holder to the maker.

     The maker shall have the right from time to time and at any time to prepay, without penalty, any portion or all of the principal amount of this note. Each partial prepayment of principal hereunder shall be applied against installments of principal not yet due in inverse order of maturity. Each payment hereunder prior to maturity or default shall first be applied against accrued and unpaid interest and then against unpaid principal.

10

916218-1 (10881-0001)

## CONTRIBUTION AGREEMENT
## FOR CERTAIN MEMBER INTEREST IN
## SCOTTY'S BREWHOUSE CARMEL, LLC

THIS CONTRIBUTION AGREEMENT (this "Agreement") is executed to be effective as of February 27, 2014, after the close of business on such date, by and between SCOTTY'S BREWHOUSE CARMEL, LLC, an Indiana limited liability company, (the "Company") and NAIRAMAT INVESTMENTS, LLC, an Indiana limited liability company ("Contributor").

### Recitals:

A. Contributor desires to contribute to the capital of the Company Three Hundred Thousand and no/100 Dollars ($300,000.00) (the "Contribution"), pursuant to the terms and conditions hereinafter set forth.

B. In consideration for such contribution, the Company desires to issue to Contributor a twenty-five percent (25%) member interest in the Company (the "Interest").

C. The parties wish to set forth in this Agreement all the terms and provisions which shall hereafter govern such contribution and issuance.

### Agreements:

In consideration of the foregoing Recitals and the mutual covenants and agreements contained herein, the parties agree as follows:

1. **Transfer of Contribution.** Contributor hereby conveys, transfers and assigns to the Company the Contribution, and the Company hereby accepts such transfer and assignment from Contributor.

2. **Issuance of Interest.** On the terms and subject to the conditions set forth in this Agreement, as consideration for the foregoing payment to the Company of the Contribution by Contributor, the Company hereby issues, and Contributor hereby subscribes for, purchases and accepts, a twenty-five percent (25%) member interest in the Company.

3. **Operating Agreement.** To induce the Company to accept the Contribution, Contributor agrees:

(a) simultaneously with the execution of this Agreement by the Company and Contributor, to become a party to the Operating Agreement of the Company and to be bound by all of the terms and conditions of such agreement;

(b) simultaneously with the execution of this Agreement by the Company and Contributor, to enter into a Purchase Agreement (Buy-Sell Agreement) to be applicable to the Interest; and

1

(c) to provide such information and to execute and deliver such other documents as may reasonably be necessary to effectuate the Contribution, all in accordance with the Operating Agreement of the Company.

4. <u>Representations, Warranties and Covenants of Contributor</u>. Contributor represents, warrants and covenants to the Company that:

(a) No commission or other remuneration is being paid or is to be paid for or on account of the Contribution and/or Company's issuance of the Interest;

(b) Contributor knows of no circumstances at this time which would require Contributor to dispose of the Interest in the foreseeable future;

(c) Contributor understands that Contributor must bear the economic risk of this investment in the Interest for an indefinite period of time because the Interest has not been registered and, therefore, cannot be sold unless registered or unless an exemption from registration is available;

(d) Contributor is a qualified purchaser under applicable federal and state securities laws and is financially able to afford any loss as a result of this investment in the Interest;

(e) Contributor acknowledges that Contributor is fully informed of the current and proposed activities of the Company and has been given or offered access to any Company information, financial or otherwise, that Contributor has requested or might reasonably require in the future;

(f) Contributor has sufficient knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of this investment which is recognized as a speculative business venture;

(g) Contributor is making the Contribution in exchange for the Interest pursuant to this Agreement for Contributor's own account for investment, and with no intention of distributing or reselling the Interest or any part thereof (by investment, it is meant that the purchase of the Interest is with a view to the benefits, if any, which may flow to the Contributor as an equity investor in the Company, without any idea of selling or otherwise disposing of the Interest when and if the Interest should reach any specified market value);

(h) Contributor has not relied upon any representation, warranty, statement, opinion or any other matter or thing done or not done, disclosed or not disclosed, as to the value of the Interest;

(i) The Interest purchased pursuant to this Agreement will not be sold or transferred by Contributor without registration under applicable federal and state securities laws, or exemption therefrom; and

(i) The Interest purchased pursuant to this Agreement will not be sold or transferred by Contributor without registration under applicable federal and state securities laws, or exemption therefrom; and

(j) It is intended that the Company rely upon the foregoing representations, warranties and covenants of Contributor in connection with the issuance of the Interest pursuant to this Agreement.

5. <u>Non-Assignability</u>. This Agreement is not transferable or assignable by Contributor.

6. <u>Governing Law</u>. This Agreement shall be enforced, governed and construed in all respects in accordance with the laws of the State of Indiana.

NAIRAMAT INVESTMENTS, LLC

By: _____
Steve Cibor, Member

Address: 7743 West Jefferson Boulevard
Fort Wayne, Indiana 46804

Federal EIN: 46-4756466

"Contributor"

SCOTTY'S BREWHOUSE
CARMEL, LLC

By: _____
Scott M. Wise, Manager

"Company"

916211-1 (10881-0001)

3