# EXHIBIT "B"

PURCHASE AGREEMENT
FOR MEMBER INTEREST IN
SCOTTY'S HOLDINGS, LLC

THIS PURCHASE AGREEMENT is executed to be effective as of January 1, 2015 (the "Effective Date"), by and among NAIRAMAT INVESTMENTS, LLC, an Indiana limited liability company (hereinafter referred to as "Member"); SCOTT M. WISE, currently an Indiana resident (hereinafter referred to as "Wise"); and SCOTTY'S HOLDINGS, LLC, an Indiana limited liability company (hereinafter referred to as the "Company").

Recitals:

A. Member is currently the owner of two hundred (200) Ownership Units in the Company and Wise is currently the owner of eight thousand eight hundred fifty seven point eight (8,857.8) Ownership Units in the Company.

B. So that continuity in the management of the affairs of the Company can be assured, Wise, Member and the Company desire to provide for, among other things: (i) the option to purchase of any or all of the Ownership Units in the Company (the "Units") now owned or hereafter acquired by Member, in the event that Member desires or involuntarily is required to sell, gift, assign, pledge or otherwise transfer or encumber any of Member's Units in the Company without the consent of Wise; and (ii) tag-along and drag-along rights.

Agreements:

In consideration of the foregoing Recitals and the mutual agreements hereinafter set forth, the parties agree as follows:

1. General Prohibition Against Transfer of Units. Without the prior written consent of Wise, Member shall not sell, gift, bequeath, assign, pledge or otherwise transfer or encumber,

1

voluntarily or involuntarily, any of Member's Units in the Company, except as set forth below in Sections 2 or 3.

2. <u>Sale or Encumbrance of Units During Lifetime</u>. If Member should at any time during Member's lifetime: (a) desire to sell, assign, pledge, gift or otherwise transfer or encumber or (b) involuntarily be required to transfer (e.g., in connection with any judgment, divorce or bankruptcy) any or all of Member's Units in the Company (hereinafter, in this Section 2 and in Sections 5 and 6, the "Subject Units") without the prior written consent of Wise, then Member shall first offer in writing to sell the Subject Units to the Company at the price and on the terms specified in Sections 5 and 6 of this Agreement (the "Offer"). If the Company rejects the Offer, or does not accept the Offer within sixty (60) days after the date of making of the Offer (the "Offer Date"), then the Offer shall promptly be made by Member to Wise. If Wise rejects the offer, or if Wise does not accept the Offer within thirty (30) days after its receipt, then Member may [not sooner than the first (1st) to occur of (x) both the Company and Wise rejecting the offer or (y) ninety (90) days—but within one hundred fifty (150) days—after the Offer Date] sell, gift, assign, pledge or otherwise transfer or encumber the Subject Units, subject to the following provisions of this Section 2. Each and any subsequent transfer or encumbrance of any Units in the Company by any holder of the Subject Units (i.e., by any immediate or remote successor/transferee of Member's Units) shall also be subject to the provisions of this Agreement (and any reference herein to "Member" shall mean and refer to such successor/transferee). Any decision by the Company to accept any offer hereunder shall require the affirmative approval of the other Members then holding a majority of the other Ownership Percentages of the Company.

3. <u>Death of Cibor</u>. In the event of the death of Steve Cibor, a member of Member ("Cibor"), Member shall automatically be deemed to have offered to sell all of Member's

2

Interest in the Company (hereinafter, in this Section 3 and in Sections 4 and 5, the "Subject Interest") to the Company at the price and on the terms specified in Sections 4 and 5 of this Agreement (the "Offer"), effective as of the date of Member's death (the "Offer Date"). If the Company rejects the Offer, or does not accept the Offer within sixty (60) days after the Offer Date, then the Offer shall automatically be deemed to have been made by Member to Holdings. Any decision by the Company to purchase the Subject Interest shall require the affirmative approval of other Members then holding a majority of the other Ownership Percentages of the Company.

4. [Intentionally Omitted.]

5. Purchase Price. The purchase price (the "Purchase Price") for the Subject Units to be purchased under Section 2, 3 or 4 of this Agreement shall be equal to (a) EBITDA (hereinafter defined); multiplied by (b) three (3); multiplied by (c) the percentage equal to the quotient of (I) the number of the Subject Units divided by (II) the total number of then issued and outstanding Ownership Units in the Company; provided, however, that in no event shall the Purchase Price for Member's entire interest in the Company be less than the amount of the unreturned / unpaid balance of Member's capital contribution made to the Company.

For purposes of this Section 5, "EBITDA" shall mean the sum of (i) the earnings of the Company allocable to the calendar year immediately preceding the calendar year that includes the Option Date, plus (ii) to the extent included in calculating such earnings (A) interest expense, (B) expenses for taxes paid or accrued, (C) depreciation and (D) amortization, all as calculated in accordance with generally accepted accounting principles.

6. Terms and Conditions. The following provisions shall be applicable with respect to any purchase of the Subject Units:

3

(a) <u>Acceptance or Termination of Offer</u>. All offers made pursuant to Section 2 or 3 shall be irrevocable and, unless sooner accepted, shall terminate either at the expiration of the applicable option period or when rejected prior thereto in writing. If accepted, an offer must be accepted with respect to all of the Subject Units which are offered and may not be accepted with respect to less than all of such interests and rights.

(b) <u>Consummation of Purchase</u>. Any purchase contemplated in Section 2 or 3 of this Agreement must be consummated on a mutually-acceptable date which is within ninety (90) days after, as applicable, the Offer Date or the Call Notice.

(c) <u>Payment of Purchase Price</u>. The total Purchase Price determined under Section 5 of this Agreement shall be paid pursuant to the terms and conditions of a promissory note in the form attached hereto as <u>Exhibit "A"</u>, which promissory note (A) shall be executed by the purchaser of the Subject Units; (B) shall have a term of five (5) years; (C) shall be payable in equal annual installments; (D) shall bear interest at the prime rate published in The Wall Street Journal on the closing date; and (E) shall provide that the first payment shall be due and payable one (1) year after the Offer Date.

7. <u>Tag-Along Rights</u>. Notwithstanding any provision of this Agreement to the contrary, in the event that Wise proposes to transfer greater than fifty percent (50%) of the Ownership Units in the Company owned by Wise ("Wise's Units") to a third party, then Wise shall refrain from effecting such transaction unless, prior to the consummation thereof, Member shall have been afforded the opportunity to join in such transfer on a pro rata basis, as hereinafter provided. Any purported transfer subject to this Section 6 not made in compliance with this Section 7 shall be void.

Prior to the consummation of any transaction described above in this Section 7, Wise shall cause each person that proposes to acquire Wise's Units in the transaction (the "Tag-Along Purchaser") to offer (the "Tag-Along Offer") in writing to Member to purchase a portion of the Ownership Units in the Company owned by Member equal to: (i) the number of Ownership Units that Wise proposes to transfer; divided by (ii) the total number of then issued and outstanding Ownership Units of the Company; multiplied by (iii) the number of Ownership Units owned by Member; at the same price per one (1) Ownership Unit or per one percent (1%) member interest (as allocated to the Company in accordance with Section 9), and on such other

4



terms and conditions, as the Tag-Along Purchaser has offered to purchase the member interest to be sold by Wise. Member shall have ten (10) days from the receipt of the Tag-Along Offer in which to accept or reject the Tag-Along Offer, and, to the extent Member accepts such Tag-Along Offer in accordance with the terms hereof, the Ownership Units to be sold by Wise shall be reduced by the portion of Member's Ownership Units to be purchased by the Tag-Along Purchaser (unless the Tag-Along Purchaser agrees to purchase all of the member interest proposed to be sold by Wise in addition to the member interest to be sold by Member).

In the event that a transfer subject to this Section 7 is proposed to be made to a person other than a member of the Company, Wise shall notify such person that the transfer is subject to this Agreement and shall ensure that no transfer is consummated without compliance with this Section.

8.  Drag-Along Rights. Notwithstanding any provision of this Agreement to the contrary, in the event that Wise proposes to transfer all of the member interest in the Company owned by it to an unrelated third party purchaser (a "Drag-Along Purchaser"), then, upon Wise's request, Member agrees to transfer all of the Ownership Units in the Company owned by Member to the Drag-Along Purchaser in the manner and on the terms set forth in this Section 8 (a "Drag-Along Sale").

If Wise elects to exercise its rights under this Section 8, then Wise shall furnish a written notice (a "Drag-Along Notice") to Member. The Drag-Along Notice shall set forth the principal terms of the proposed Drag-Along Sale, including the name of the Drag-Along Purchaser and the consideration per one (1) Ownership Unit to be received by Wise in the proposed Drag-Along Sale (as allocated to the Company in accordance with Section 9). If Wise consummates the proposed Drag-Along Sale, then Member shall be bound and obligated to transfer all of the

5

Ownership Units in the Company held by Member to the Drag-Along Purchaser in the Drag-Along Sale on the same terms and conditions, including, without limitation, the purchase price per one (1) Ownership Unit payable to Wise for the Ownership Units transferred by Wise to the Drag-Along Purchaser in the Drag-Along Sale (as allocated to the Company in accordance with Section 9); provided, however, the form of consideration payable to Member for the Ownership Units transferred by Member to the Drag-Along Purchaser in the Drag-Along Sale shall be determined by Member and the Drag-Along Purchaser.

9. <u>Allocation of Purchase Price for Units in Company – Tag-Along / Drag-Along</u>. Wise is the owner of a majority of the member interests in the Company as well as in certain entities affiliated with the Company (the "Affiliates", and, together with the Company, the "Entities" or an "Entity"). In the event that an unrelated third party purchaser makes an offer: (i) to which the provisions of Section 7 and/or 8 apply; and (ii) that involves a purchase of member interests held by Wise in the Company and any one (1) or more Affiliates (a "Third Party Offer"), the purchase price to be paid by such unrelated third party purchaser shall, for the purposes of Sections 7 and 8 of this Agreement, be allocated among the Entities as follows:

(a) The accounting firm for the Entities shall calculate EBITDA for the Company and each Affiliate subject to the Third Party Offer (each, an "Entity Amount"). For purposes of this Section 8, "EBITDA" shall mean the sum of (i) the earnings of, as applicable, the Company or Affiliate allocable to the calendar year immediately preceding the calendar year in which the Third Party Offer is made, plus (ii) to the extent included in calculating such earnings (A) interest expense, (B) expenses for taxes paid or accrued, (C) depreciation and (D) amortization, all as calculated in accordance with generally accepted accounting principles.

(b) The amount of the purchase price to be allocated to the Company for the purposes of Sections 7 and 8 of this Agreement shall be equal to: (i) the quotient of: (A) the Company's Entity Amount; <u>divided by</u> (B) the sum of all Entity Amounts calculated pursuant to subsection (a) above; <u>multiplied by</u> (ii) the purchase price stated in the Third Party Offer.

6



10. <u>Nonconformance</u>. Any attempted sale, gift, assignment, pledge or other transfer or encumbrance by Member which is not in conformity with the preceding provisions of this Agreement shall be void and of no force or effect.

11. <u>Transfer of Units and Rights</u>. Upon receipt of the payment, as provided in Section 6(c) of this Agreement, by, as applicable, Member or Member's Estate, as applicable, Member or Member's Estate, as applicable, shall cause the Units purchased to be assigned and transferred properly and conveyed free and clear of all liens, claims and encumbrances, together with any and all other documents necessary to carry out the terms of this Agreement.

12. <u>Termination of Agreement</u>. This Agreement shall terminate upon the occurrence of any of the following events:

    (a) The dissolution or the termination of the existence of the Company; or

    (b) The execution by all of the parties to this Agreement of a written agreement to terminate this Agreement.

No such termination shall affect any liability or obligation theretofore accrued hereunder; for instance, in the event of the termination of this Agreement at such time as the full amount of the purchase price has not been paid for any Units of the Company purchased or required to be purchased hereunder, then such termination shall not affect any such unpaid obligation.

13. <u>Remedies for Enforcement of Agreement</u>. In the event that a party or parties hereto breaches any term or condition of this Agreement, the non-breaching party or parties shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to obtain damages for any breach of this Agreement, to enforce the specific performance hereof or to enjoin the violation of the terms of this Agreement. In any such action, the prevailing party or parties shall be entitled to recover such party's attorneys' fees and costs incurred in such action from the losing party or parties.

7

14. <u>Notices</u>. All notices, elections, offers, acceptances, or other communications permitted or required hereunder shall be in writing and shall be effective when mailed within the State of Indiana, certified or registered United States mail, postage prepaid, return receipt requested, as follows:

| | |
|---|---|
| if to the Company at: | 3855 East 96th Street, Suite J<br>Indianapolis, Indiana 46240 |
| if to Wise at: | 3855 East 96th Street, Suite J<br>Indianapolis, Indiana 46240 |
| if to Member at: | 7743 West Jefferson Boulevard<br>Fort Wayne, Indiana 46804 |

or to such other address(es) within the State of Indiana as shall be designated by written notice(s) hereunder.

15. <u>Amendment</u>. This Agreement may be amended only by a writing signed by all of the parties hereto.

16. <u>General</u>. All interests owned by a party to this Agreement, whether acquired before or after the execution of this Agreement, shall be subject to all of the terms and conditions of this Agreement. Except as assignment is prohibited or restricted hereunder, this Agreement shall inure to the benefit of and be binding upon all of the parties hereto and their respective successors, assigns, heirs, beneficiaries and personal and legal representatives. This Agreement shall be subject to, governed by and construed in accordance with the laws of the State of Indiana, irrespective of the residence of the parties. In the event any provision of this Agreement shall conflict with any provision of the Articles of Organization and/or the Operating Agreement of the Company, then such provision of this Agreement shall control.

[Signatures appear on the following page.]



IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the date first written above.

SCOTTY'S HOLDINGS, LLC

By: _____
Scott M. Wise, Manager

"Company"

NAIRAMAT INVESTMENTS, LLC

By: _____
Printed: Steven T Cibor
Title: owner

"Member"

_____
Scott M. Wise, Individually

"Wise"

9

EXHIBIT "A"
TO
PURCHASE AGREEMENT

Form of Promissory Note

$_____                              _____, _____

      FOR VALUE RECEIVED, the undersigned, _____, promises to pay to the order of _____ on or before _____, _____, and at the times and in the manner hereinafter specified, the principal sum of _____ and ___/100 Dollars ($_____), with interest on the principal balance from time to time remaining unpaid at the rate of _____ percent (_____%) per annum. The principal amount of this Note shall be payable in five (5) equal, consecutive annual installments on the _____ (____) day of _____, commencing on _____, _____ and continuing through _____, _____, with each installment equal to one-fourth (1/4) of the original principal amount hereof. Accrued and unpaid interest shall be due and payable at each time an installment of principal is due and payable. Maker shall pay interest at the rate per annum which is two percent (2%) above the rate specified hereinabove with respect to any amounts not paid when due, together with costs of collection and reasonable attorney's fees. All amounts payable or with respect to this note shall be payable without relief from valuation or appraisement laws.

      This note is payable at _____, _____, _____, and is given to evidence the unpaid balance of the purchase price of a certain member interest in Scotty's Holdings, LLC, sold by the payee hereof to the maker hereof. Presentment, notice of dishonor and demand, protest and diligence in collection and bringing suit are hereby severally waived by the maker and each endorser who hereby severally consent that the time for the payment of this note or of any installment hereunder may be extended from time to time without notice by the holder.

      The holder of this note, at the holder's option and without notice, may declare the entire unpaid balance hereof (principal and accrued interest) immediately due and payable upon any default in the payment of any principal or interest hereunder, and a failure to cure such default within thirty (30) days after written notice thereof by the holder to the maker.

      The maker shall have the right from time to time and at any time to prepay, without penalty, any portion or all of the principal amount of this note. Each partial prepayment of principal hereunder shall be applied against installments of principal not yet due in inverse order of maturity. Each payment hereunder prior to maturity or default shall first be applied against accrued and unpaid interest and then against unpaid principal.

_____

10

1222042-1 (10881-0001)

